# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:23-cv-81399-KAM

TWC 2022, INC., D/B/A THE WELLNESS COMPANY,

          Plaintiff,

vs.

MELALEUCA, INC.

          Defendant.

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

For its First Amended Complaint against Defendant Melaleuca, Inc. ("Melaleuca"), Plaintiff TWC 2022, Inc. d/b/a The Wellness Company ("TWC") hereby alleges as follows:

### THE PARTIES

1.      Plaintiff TWC is a Delaware corporation with its principal place of business in Boca Raton, Florida.

2.      Defendant Melaleuca is an Idaho corporation with its principal place of business in Idaho Falls, Idaho.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201.

4.      This Court has personal jurisdiction over Defendant Melaleuca based upon the following: (a) Melaleuca engaged in tortious activity against TWC, directed at TWC in the State of Florida; (b) Melaleuca infringed upon TWC's common law trademark rights in the THE

WELLNESS COMPANY mark in the State of Florida; and (c) Melaleuca sent tortious cease and desist letters into the State of Florida threatening to file suit against Plaintiff, a corporation with its principal place of business in this judicial district.

**FACTS COMMON TO ALL CLAIMS**

5.      TWC is a Delaware corporation with its principal place of business in Boca Raton, Florida. TWC does business in Florida and nationwide as THE WELLNESS COMPANY.

6.      TWC manufactures, markets, and sells dietary supplements focused upon natural approaches to curing illnesses. TWC maintains two separate product lines for these supplements: (a) the WELLNESS SIGNATURE SERIES, which focuses on specially designed, scientifically-backed formulations from TWC's Chief Medical Team that optimizes well-being; and (b) the WELLNESS VITALITY SERIES, which focuses upon supplements for everyday wellness.

7.      Plaintiff TWC has continuously used the TWC: THE WELLNESS COMPANY, THE WELLNESS COMPANY, and WELLNESS VITALITY SERIES marks in the State of Florida and nationwide and has acquired significant common law rights in those marks in the State of Florida and in other parts of the United States.

8.      Defendant Melaleuca is a multi-level marketing company based in Idaho Falls, Idaho that sells supplements, cleaning supplies, and personal care products.

9.      Melaleuca has two trademark registrations with the United States Patent and Trademark Office (the "USPTO") for MELALEUCA: THE WELLNESS COMPANY. In both registrations, Melaleuca disclaimed the phrase "Wellness Company."

10.     While a trademark registration typically provides the registrant with a presumption of exclusive, nationwide rights to that trademark, a disclaimer greatly narrows the scope of the registrant's rights.

11.     Specifically, a disclaimer in a trademark registration is the registrant's acknowledgment that it does not, and can never, claim the exclusive right to use the disclaimed part of the mark.

12.     By disclaiming "Wellness Company," Melaleuca acknowledged that it does not, and can never, possess the exclusive right to use "Wellness Company."

13.     Melaleuca does not have registered rights in "Wellness Company."

14.     Melaleuca might be able to claim common law rights in "Wellness Company" in geographic areas where its use of the phrase is robust enough to build common law trademark rights, and even then, it would need to be deemed non-generic or non-descriptive to function as a trademark that could be enforceable.

15.     Melaleuca has no common law trademark rights to "Wellness Company" in Florida. At best, it *might* hypothetically have them in Idaho, but not beyond.

16.     Common law trademark rights are geographic in nature. This means that the first to use a mark *in a certain market* is the senior user in that market and that the senior user's rights are geographically limited to the markets where it actually uses the mark.

17.     Actual and continuous use is required to maintain common law trademark rights.

18.     The senior user in a certain market may enjoin uses that infringe upon its prior rights. *See Tally-Ho, Inc. v. Coast Cmty. College Dist.*, 889 F.2d 1018, 1022-23 (11th Cir. 1989).

19.     Based upon Melaleuca's allegations regarding its use of "Wellness Company," which TWC does not accept as true, its use of the term in the State of Idaho is hypothetically robust enough that it may have arguably gained common law rights in "Wellness Company" in Idaho (however TWC does not accept this as a fact). Melaleuca is headquartered there, apparently has a retail presence there, and alleges that it engages in significant advertising there.

20.     It is highly doubtful that Melaleuca's "Wellness Company" Idaho-specific common law rights are robust enough to save it from a finding of genericness, but it is at least hypothetically possible.

21.     Given Melaleuca's own assertions about the nature of its business and its marketing and advertising efforts outside of Idaho, its common law rights in "Wellness Company," to the extent that they exist at all, do not exist outside of Idaho's borders, and certainly do not exist in Florida.

22.     By contrast, TWC has common law rights in THE WELLNESS COMPANY in Florida and nationwide. It is headquartered in Florida and advertises and markets itself heavily and extensively in Florida and nationwide.

23.     The existence of common law trademark rights in a geographic market is a highly fact intensive issue, often requiring survey evidence. TWC is confident that survey evidence and discovery will demonstrate that it possesses common law trademark rights in THE WELLNESS COMPANY in Florida and nationwide and that Melaleuca does not.

24.     By Melaleuca's own admission, its presence in Florida is almost non-existent and limited to four remote workers, which does nothing to build common law trademark rights. It has no retail or office space in Florida. It does not own or lease property in Florida. It is not registered to do business in Florida. It does not advertise in Florida. It has no bank accounts or mailing addresses in Florida.

25.     In sum, with such a thin presence in Florida, it is not possible that Melaleuca could claim any common law rights in Florida.

26.     To the extent that Melaleuca ever had common law rights in "Wellness Company" outside of Idaho, they have lost those rights by failing to continuously use the term as a trademark

in commerce in markets other than Idaho, and if they have preserved those rights elsewhere, they certainly have not preserved them in Florida, and discovery will show that they have not preserved them in other states as well.

27.     To the extent that Melaleuca ever had common law rights in "Wellness Company" outside of Idaho, it expressly abandoned those rights by failing to police third party uses of "Wellness Company." A search of the USPTO's site returns almost 500 results for registered marks that use the terms "Wellness" and "Company" for dietary and/or nutritional supplements. Upon information and belief, Melaleuca has made no attempt to force any of these registrants to cease and desist the use of these trademarks.

28.     TWC uses THE WELLNESS COMPANY as a trademark in Florida (but not only in Florida) and has common law trademark rights in Florida. Melaleuca does not.

29.     TWC is the senior user of THE WELLNESS COMPANY in Florida. Given the geographic specificity of common law trademark rights, Melaleuca's use of THE WELLNESS COMPANY in Florida infringes upon TWC's common law rights in its areas of geographic priority, such as Florida (but in other states as well).

30.     While Melaleuca has expressly disclaimed "Wellness Company" as a trademark, TWC has not done so.

31.     Melaleuca perceives TWC as a competitive threat to its business. Thus, while it has ignored hundreds of other uses of "Wellness Company" and knows that it does not have, and can never have, nationwide rights to "Wellness Company," it elected to send sham cease and desist letters to TWC into the State of Florida.

32.     On June 30, 2023, Melaleuca sent its first sham cease and desist letter to TWC, falsely claiming that it "has used the tagline THE WELLNESS COMPANY as a trademark for

health and wellness products, including supplements." *See* June 30, 2023, correspondence from Melaleuca, attached as **Exhibit 1**.

33.    Melaleuca's letter falsely implied that it had nationwide rights to THE WELLNESS COMPANY and did not reveal that it disclaimed rights to "Wellness Company" with the USPTO. Tellingly, it did not allege that it used "The Wellness Company" as a mark in the State of Florida.

34.    In addition to making false claims about its ownership of THE WELLNESS COMPANY, Melaleuca also misrepresented that it had registered rights in VITALITY. However, it does not.

35.    Melaleuca does have registered rights in VITALITY FOR LIFE, VITALITY PAK, and VITALITY COLDWATER OMEGA-3. It additionally has an application pending with the USPTO for VITALITY CALCIUM COMPLETE.

36.    Based upon TWC's use of THE WELLNESS COMPANY as the name of its company and WELLNESS VITALITY SERIES as a product line, Melaleuca falsely concluded that TWC was infringing upon Melaleuca's trademark rights.

37.    Melaleuca's letter concluded by demanding that TWC "cease and desist from selling or offering to sell supplement products, and any other health-and-wellness-related goods and services, using the VITALITY and THE WELLNESS COMPANY marks on [its] website and products."

38.    Melaleuca misrepresented its trademark rights in both THE WELLNESS COMPANY and VITALITY.

39.    Regarding VITALITY, TWC does not use the mark in a manner similar to Melaleuca's use of the word and mark. TWC uses it in connection with the phrase "WELLNESS VITALITY SERIES", while Melaleuca uses it together with completely unrelated terms.

40.    In its August 24, 2024, response to Melaleuca's cease and desist letter, TWC noted that VITALITY is highly diluted, leaving customers accustomed to distinguishing between various "VITALITY-formative marks owned by numerous unrelated third parties based only on minor differences." In fact, on the USPTO site, there were "134 results for marks used in connection with supplements, multiple of which are used in connection with Class 35 services," similar to those offered by Melaleuca. *See* August 24, 2023, correspondence from TWC, attached as **Exhibit 2**.

41.    Melaleuca's second sham cease and desist letter asserted for the first time that TWC's "conjoint use of both THE WELLNESS COMPANY and VITALITY" mimics "Melaleuca's use for identical or other closely related goods," resulting in a likelihood of consumer confusion. *See* September 5, 2023, correspondence from Melaleuca, attached as **Exhibit 3**.

42.    However, TWC does not use the THE WELLNESS COMPANY and VITALITY names in a manner identical, or even similar, to Melaleuca. It does not use THE WELLNESS COMPANY as a tagline, and it does not use VITALITY in connection with the terms "for life," "pak," "coldwater omega-3," or "calcium complete." Rather, it uses VITALITY as part of the name of its WELLNESS VITALITY SERIES product line.

43.    Melaleuca's assertion that it sent cease and desist letters to TWC because TWC was using WELLNESS and VITALITY together is disingenuous and untrue. Melaleuca does not use THE WELLNESS COMPANY and VITALITY as a composite mark. Rather, it uses them separate and apart from one another.

44.    The disingenuousness of Melaleuca's assertion that its cease and desist was sent because TWC is using "WELLNESS" and "VITALITY" in conjunction is exemplified by the trademark registrations and applications using the two words together for similar goods and services that Melaleuca has ignored. These include, but are not limited to:

a.      WAVE WELLNESS & VITALITY EXCHANGE (Reg. No. 6,183,431) for, among other things, wholesale and retail store services in the field of non-medicated skin care preparations, namely creams, lotions, and gels, dietary and nutritional supplements, manually operated and automatic exercise equipment;

b.      LIVING SERIES VITALITY NATURAL WELLNESS (Reg. No. 5,942,535) for skin care and health spa services;

c.      C CRESCENDUM HEALTH WELLNESS VITALITY (Reg. No. 7,419,297) for, among other things, retail store services featuring apparel, skin care preparations, fragrances, yoga products, and equipment for playing a paddle-ball style sport;

d.      SIGNAL OVER NOISE VITALITY AND WELLNESS SERVICES (Reg. No. 5,751,758) for, among other things, health care services, namely wellness programs, wellness and health-related consulting services;

e.      VITALITY HYDRATION AND WELLNESS (Reg. No. 6,199,031) for health spa services, including vitamin infusions;

f.      VITALITY WELLNESS STRIP (Ser. No. 98/187,377) for wellness and health related consulting services;

g.      VERDICT VITALITY WELLNESS (Ser. No. 98/197,633) for dietary and nutritional supplements;

h.      WELLNESS VITALITY LONGEVITY HEALTHSPAN EXTENSION (Ser. No. 97/596,797) for, among other things, matching consumers with professionals in the fields of biology, biotechnology, exercise, fitness, healthcare, medication, nutrition, pharmacology, and science for healthy aging and wellness;

RANDAZZA | LEGAL GROUP

i. WELLNESS VITALITY LONGEVITY HEALTHSPAN EXTENSION (Ser. No. 97/596,802) for educational speakers in the fields of aging, biology, biotechnology, exercise, fitness, health, healthcare, medicine, nutrition, pharmacology, science, and wellness;

j. ELITE WELLNESS VITALITY (Ser. No. 98/436.021) for dietary and nutritional supplements; and

k. LUVLEY STRENGTH, WELLNESS, VITALITY (Ser. No. 98/521,436) for water bottles, vitamins, and clothing.

41. The letters that Melaleuca sent into the State of Florida to TWC were a sham, motivated by Melaleuca's desire to impose anticompetitive harm from the threat of subjecting TWC to the judicial process rather than to seek redress of legitimate harm.

42. Specifically, the claims threatened by Melaleuca were so objectively baseless that no reasonable litigant could expect success on the merits.

43. Through its cease and desist letters, Melaleuca attempted to live up to its namesake, a species of plant so invasive that it cannot be possessed in the State of Florida because it chokes off the ability of native flora to survive.

44. Florida consumers will likely be confused by Melaleuca's use of THE WELLNESS COMPANY in the State of Florida, given TWC's senior common law trademark rights in the state. However, no reasonable consumer would be confused regarding TWC's affiliation with Melaleuca. Defendant created a case and controversy and threatened legal action against TWC, entitling TWC to request a declaratory judgment from the Court so that it may go about its business and affairs without the pall of a lawsuit hanging over its head.

/ / /

## FIRST CLAIM FOR RELIEF

## Common Law Trademark Infringement

45.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 44 as if set forth fully herein.

46.     By virtue of having used and continuing to use its THE WELLNESS COMPANY trademarks in the State of Florida and nationwide, TWC has acquired common law rights in those marks.

47.     Plaintiff TWC has used its marks extensively and continuously in the State of Florida and nationwide. It is the senior user of THE WELLNESS COMPANY in the State of Florida.

48.     By Melaleuca's own admission, its presence in the State of Florida is virtually non-existent.

49.     However, Melaleuca has sold products in Florida bearing the infringing use of "Wellness Company."

50.     These sales violate TWC's common law trademark rights.

51.     Based upon Melaleuca's own representations, it is possible that it may own common law trademark rights to THE WELLNESS COMPANY in Idaho, where it is located. However, Melaleuca possesses no common law rights to the name and mark outside of the State of Idaho.

52.     Defendant's use of THE WELLNESS COMPANY in the State of Florida infringes upon Plaintiff's common law rights in that mark.

53.     Defendant's use of THE WELLNESS COMPANY in Florida is likely to cause confusion, mistake, or deception among consumers, who will falsely believe that Defendant's goods and services originate from, or are affiliated with, or endorsed by Plaintiff.

54.     As a direct and proximate cause of Defendant's infringement of Plaintiff's common law trademark rights, Plaintiff has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

## SECOND CLAIM FOR RELIEF

### Unfair Competition - 15 U.S.C. § 1125(a)

53.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 44 as if set forth fully herein.

54.     Defendant Melaleuca's use in commerce of THE WELLNESS COMPANY in connection with Defendant's goods and services, which are largely the same as Plaintiff's goods and services, constitutes a false designation of origin and/or a false and misleading description or representation of fact, which is likely to cause confusion, cause mistake, or to deceive as to affiliation, connection, or association with Plaintiff TWC, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff.

55.     Defendant Melaleuca's use in commerce of THE WELLNESS COMPANY with the knowledge that Plaintiff owns and has used, and continues to use, its trademarks constitutes intentional conduct by Defendant to make false designations of origin and false descriptions about Defendant's services and commercial activities.

56.     As a direct and proximate result of such unfair competition, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

## THIRD CLAIM FOR RELIEF

## Intentional Misrepresentation

57.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 44 as if set forth fully herein.

58.     Defendant Melaleuca sent two cease and desist letters to Plaintiff in the State of Florida that intentionally misrepresented Defendant's legal rights to the THE WELLNESS COMPANY mark.

59.     Specifically, Defendant intentionally failed to disclose that: (a) it had disclaimed the term "Wellness Company" in its mark registrations with the USPTO for MELALEUCA: THE WELLNESS COMPANY; and (b) its presence in Florida was virtually non-existent and that it had no common law rights in Florida or nationwide.

60.     Instead, Defendant asserted its rights in the letter as though it had the exclusive right to use "Wellness Company" nationwide, when it did not and knew it did not.

61.     Defendant additionally intentionally misrepresented its trademark rights in VITALITY in those cease and desist letters. Specifically, the cease and desist letters were drafted as though Defendant possessed exclusive rights in the VITALITY mark when Defendant has never used that mark on its own but always as a composite mark in conjunction with other words or phrases. Defendant additionally drafted the letter as though there were not well over 100 other companies using some variation of the VITALITY mark for similar, if not identical purposes, that Melaleuca intentionally ignored.

62.     The cease and desist letters were a sham. Melaleuca knew or should have known that the claims threatened therein were objectively meritless and would not entitle Melaleuca to judicial relief. Moreover, Melaleuca subjectively knew the cease and desist letters were baseless,

as evidenced by the number of third parties using variations of "WELLNESS COMPANY" and "VITALITY in conjunction with "WELLNESS" that Melaleuca ignored.

63.     TWC reasonably relied upon the false statements to its detriment. Specifically, it re-routed funds and resources that would have gone into marketing and sales expansions into examining the veracity of Melaleuca's claims and TWC's entitlement to use THE WELLNESS COMPANY and VITALITY as trademarks in the State of Florida and nationwide. These marketing and sales expansions will continue to be delayed until this matter is resolved.

64.     Due to Melaleuca's intentional misrepresentations, TWC has suffered, and will continue to suffer, monetary loss and has been injured in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF

### Tortious Interference with Contractual Relations

65.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 44 as if set forth fully herein.

66.     Defendant Melaleuca sent cease and desist letters to Plaintiff TWC on June 30, 2023 and September 5, 2023 asserting that TWC was infringing upon its trademarks for MELALEUCA: THE WELLNESS COMPANY, VITALITY FOR LIFE, VITALITY PAK, VITALITY COLDWATER OMEGA-3, and VITALITY CALCIUM COMPLETE.

67.     The cease and desist letters sent by Melaleuca to TWC were a "sham" in that they were objectively baseless and that Melaleuca was aware that they were baseless and had the subjective intent to impose anticompetitive harm upon TWC and not to obtain judicial relief.

68.     The cease and desist letters were objectively baseless because Melaleuca disclaimed "Wellness Company" from its registrations for MELALEUCA: THE WELLNESS COMPANY and cannot claim an exclusive right to use "Wellness Company."

69.     The cease and desist letters were objectively baseless because, while TWC uses "WELLNESS" and "VITALITY" in conjunction with each other, Melaleuca does not.

70.     No reasonable litigant could reasonably expect success on the merits based upon the underlying allegations set forth in Melaleuca's cease and desist letters.

71.     Melaleuca subjectively sent its cease and desist letters to TWC in bad faith, as evidenced by the fact that Melaleuca has ignored numerous other trademark registrations and applications with the USPTO for variations of THE WELLNESS COMPANY used for similar goods and services.

72.     Melaleuca subjectively sent its cease and desist letters to TWC in bad faith, as evidenced by the fact that Melaleuca has ignored numerous other trademark registrations and applications with the USPTO that use the term "WELLNESS" in conjunction with the term "VITALITY" for similar goods and services.

73.     Melaleuca did not send its cease and desist letters threatening legal action as a legitimate attempt to seek government redress for TWC's alleged infringement.

74.     TWC has business relationships with its current customers and has legal rights in those relationships.

75.     Defendant Melaleuca knows of Plaintiff's business relationships with its current customers.

76.     Melaleuca sent its cease and desist letters to TWC to disrupt TWC's business relationships with its current customers.

77.     Melaleuca's sham cease and desist letters actually succeeded in disrupting those relationships by forcing TWC to spend its time, money, labor, and other resources on evaluating the strength of Melaleuca's alleged trademarks and trademark claims, whether TWC should

rebrand, and whether TWC could continue to provide goods and services to its existing clients using its THE WELLNESS COMPANY and WELLNESS VITALITY SERIES marks.

78.　　If not for this diversion of resources caused by Defendant's conduct, Plaintiff would have further expanded its customer base and its relationships with existing customers.

79.　　Due to Melaleuca's tortious interference, TWC has suffered, and will continue to suffer, monetary loss and has been injured in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### Declaratory Judgment

### Plaintiff's Use of THE WELLNESS COMPANY

79.　　Plaintiff repeats and realleges the allegations of Paragraphs 1 through 44 as if set forth fully herein.

80.　　Plaintiff uses THE WELLNESS COMPANY as a trademark and as the name of its business and has done so since its inception.

81.　　Defendant claims that it has used "The Wellness Company" as a tagline since 2001 and referred Plaintiff to two trademark registrations with the USPTO that it purportedly owns for MELALEUCA: THE WELLNESS COMPANY. However, it disclaimed the descriptive term "The Wellness Company" on both registrations.

82.　　Moreover, the word "Company" has no source identifying capacity, and the word "Wellness" is highly descriptive, leaving consumers with experience in distinguishing between various uses of the term by unrelated third parties.

83.　　Other supplement companies use the term "Wellness" to identify their goods and services, presumably with no consumer confusion.

84.     To the extent that Defendant's accusations are accurate, a fact Plaintiff strongly disputes and does not concede, Plaintiff did not use THE WELLNESS COMPANY in a manner that suggests a connection with Defendant Melaleuca or its goods and/or services.

85.     Defendant sent Plaintiff cease and desist letters on June 30 and September 5, 2023, falsely accusing Plaintiff of infringing its trademark rights through its use of the THE WELLNESS COMPANY name and demanding that Plaintiff cease use of the mark, creating a case or controversy and entitling TWC to ask this Court for declaratory relief.

86.     Accordingly, pursuant to the Declaratory Judgment Act and the federal Lanham Act, TWC respectfully requests the declaration of this Court that it has not infringed upon any purported trademark rights of Defendant by its use of THE WELLNESS COMPANY and that its use is lawful and not subject to any restraint under the Lanham Act nor any other legal theories.

### SIXTH CLAIM FOR RELIEF

### Declaratory Judgment

### Plaintiff's Use of WELLNESS VITALITY SERIES

87.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 44 of the Complaint as if set forth fully herein.

88.     Plaintiff uses the term "Vitality" as part of the name of one of its product lines, the WELLNESS VITALITY SERIES.

89.     Defendant claims that it has used the term "Vitality" to market an "extensive line of products" and as a trademark since September 1989 and that Plaintiff used "Vitality" in an identical manner.

90.     However, TWC and Melaleuca do not use the term "Vitality" in an identical manner. TWC uses it in conjunction with its WELLNESS VITALITY SERIES, while Melaleuca

uses it in conjunction with unrelated terms, such as VITALITY FOR LIFE, VITALITY PAK, VITALITY COLDWATER OMEGA-3, and VITALITY CALCIUM COMPLETE.

91. Moreover, the term "VITALITY" is also highly diluted in the supplement industry, leaving customers accustomed to distinguishing between various VITALITY-formative marks owned by numerous unrelated third parties based only on minor differences.

92. Other supplement companies use the term "Vitality" to identify their goods and services, presumably with no consumer confusion.

93. To the extent that Defendant's accusations are accurate, a fact Plaintiff does not concede, Plaintiff did not use VITALITY or WELLNESS VITALITY SERIES in a manner that suggests a connection with Defendant Melaleuca or its goods and/or services.

94. To the extent that Defendant's accusations are accurate, a fact Plaintiff does not concede, Plaintiff did not use VITALITY or WELLNESS VITALITY SERIES in a manner that is likely to confuse or cause mistake among consumers.

95. Defendant sent Plaintiff cease and desist letters on June 30 and September 5, 2023, falsely accusing Plaintiff of infringing its trademark rights through its use of the WELLNESS VITALITY SERIES and/or VITALITY name and demanding that Plaintiff cease use of the mark, creating a case or controversy and entitling TWC to ask this Court for declaratory relief.

96. Accordingly, pursuant to the Declaratory Judgment Act and the federal Lanham Act, TWC respectfully requests the declaration of this Court that it has not infringed upon any purported trademark rights of Defendant by its use of the WELLNESS VITALITY SERIES.

/ / /

/ / /

/ / /

## SEVENTH CLAIM FOR RELIEF

### Declaratory Relief

### Plaintiff's Use of THE WELLNESS COMPANY In Conjunction

### With WELLNESS VITALITY SERIES

97.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 44 of the Complaint as if set forth fully herein.

98.     Plaintiff uses THE WELLNESS COMPANY as the name of its business and uses WELLNESS VITALITY SERIES as the name of one of its product lines.

99.     Defendant claims that Plaintiff's use of THE WELLNESS COMPANY and WELLNESS VITALITY SERIES in conjunction with each other will result in consumer confusion, as Defendant alleges that it has used THE WELLNESS COMPANY and VITALITY separately and together for decades and that Plaintiff's use mimics its use.

100.    However, Plaintiff's use does not mimic Defendant's use. It does not use THE WELLNESS COMPANY as a tagline, and it uses "Vitality" as part of the name of its WELLNESS VITALITY SERIES product line.

101.    To the extent that Defendant's accusations are accurate, a fact Plaintiff does not concede, Plaintiff did not use THE WELLNESS COMPANY and WELLNESS VITALITY SERIES together in a manner that suggests a connection with Defendant Melaleuca or its goods and/or services.

102.    To the extent that Defendant's accusations are accurate, a fact Plaintiff does not concede, Plaintiff did not use THE WELLNESS COMPANY and WELLNESS VITALITY SERIES together in a manner that is likely to confuse or cause mistake among consumers.

103.     Defendant sent Plaintiff cease and desist letters on June 30 and September 5, 2023, falsely accusing Plaintiff of infringing its trademark rights through its use of the THE WELLNESS CENTER and WELLNESS VITALITY SERIES marks together and demanding that Plaintiff cease use of the marks, creating a case or controversy and entitling TWC to ask this Court for declaratory relief.

104.     Accordingly, pursuant to the Declaratory Judgment Act and the federal Lanham Act, TWC respectfully requests the declaration of this Court that it has not infringed upon any purported trademark rights of Defendant by its use of the THE WELLNESS CENTER in conjunction with WELLNESS VITALITY SERIES.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff TWC hereby prays for relief as follows:

A.      An award of compensatory, consequential, statutory, and punitive damages to Plaintiff in an amount to be determined at trial;

B.      Preliminary and permanent injunctive relief prohibiting Defendant from infringing on Plaintiff's common law rights to THE WELLNESS COMPANY and confusingly similar variations in the State of Florida;

C.      Preliminary and permanent injunctive relief prohibiting Defendant from infringing on Plaintiff's common law rights to THE WELLNESS COMPANY and confusingly similar variations nationwide;

D.      Preliminary and permanent injunctive relief prohibiting Defendant from interfering with Plaintiff's use of THE WELLNESS COMPANY as the name of its business;

E.      Preliminary and permanent injunctive relief prohibiting Defendant from interfering with Plaintiff's use of WELLNESS VITALITY SERIES as the name of one of its product lines;

F.  Preliminary and permanent injunctive relief prohibiting Defendant from interfering with Plaintiff's use of THE WELLNESS COMPANY and WELLNESS VITALITY SERIES together to market its goods and services;

G.  Declaratory judgment that Plaintiff did not infringe upon Defendant's purported THE WELLNESS COMPANY trademark;

H.  Declaratory judgment that Plaintiff did not infringe upon Defendant's purported VITALITY trademark;

I.  Declaratory judgment that Plaintiff did not infringe upon Defendant's trademarks by using THE WELLNESS COMPANY and WELLNESS VITALITY SERIES together to market its goods and services;

J.  An award of actual damages resulting from Defendant's tortious interference with Plaintiff's contractual relations;

K.  An award of interest, attorneys' fees, and costs incurred by Plaintiff in prosecuting this action; and

L.  All other relief to which Plaintiff is entitled.

## JURY DEMAND

Plaintiff demands a trial by jury as to all facts, issues, and claims that are so triable.

Dated: October 25, 2024.          Respectfully submitted,

_/s/ Marc J. Randazza_
Marc J. Randazza (FL Bar No. 625566)
ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
2 S Biscayne Blvd #2600
Miami, FL 33131
Tel: (888) 887-1776

Ronald D. Green (*pro hac vice*)

rdg@randazza.com
RANDAZZA LEGAL GROUP, PLLC
4974 S. Rainbow Blvd., Ste. 100
Las Vegas, NV 89118
Tel: (888) 887-1776

*Attorneys for Plaintiff,*
TWC 2022, INC., d/b/a The Wellness Company.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 25, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Marc J. Randazza
MARC J. RANDAZZA